## Baile, Appellant, *v.* Robinson.

*Trusts and trustees—Conveyance of property—Breach of trust.*

Where in an action of trespass it appeared that the plaintiff, a contractor for a building operation, agreed in writing to take a note from the owner for work to be done with the equity in one of the houses of the operation as security for its payment, and it also appears that on the very day of the written agreement, the owner conveyed the building in question to a third person without consideration, and such person conveyed to the defendant also without consideration, and with full knowledge of the written agreement, and the defendant conveyed the property to an innocent purchaser for value who held it without any record or actual knowledge of the agreement, but it does not appear at what time the work was finished or that the plaintiff had ever demanded an assignment to him of the equity, or that the owner was insolvent at any time prior to the bringing of the suit, the plaintiff has no standing to recover damages from the

defendant on the theory that the latter held the title in trust for the plaintiff and that he committed a breach of trust in making the conveyance which he did.

Argued Dec. 17, 1909. Appeal, No. 240, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1908, No. 3,976, for defendant on demurrer to statement in case of Robert Baile, to use of Robert Baile Company, Incorporated, v. Alexander D. Robinson. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for an alleged breach of trust.

Demurrer to statement.

The court in an opinion by WILTBANK, J., sustained the demurrer and entered judgment for defendant.

*Error assigned* was the judgment of the court.

*Charles Kuni, Jr.*, for appellant.—It is well settled in Pennsylvania, that a conveyance of real estate as security for a debt is a mortgage: Mellon v. Lemmon, 111 Pa. 56, and as the clause in the contract is an agreement to "set aside" a specific property as "collateral security" for the deferred payment, it is an agreement to give a mortgage.

Said agreement to give a mortgage raises a trust. This will clearly appear from the principle stated in the case of Bridgeport Electric & Ice Co. v. Meader, 72 Fed. Repr. 115.

McBride, holding title to said premises in trust as collateral security in favor of the plaintiff for the deferred payment, when Fetter and Robinson, respectively, took title to said premises from and through him, as volunteers and with notice of said agreement, they held said title subject to the same trust: Coble v. Nonemaker, 78 Pa. 501.

The defendant holding title to said premises thus impressed with a trust in favor of the plaintiff, committed a breach of trust and a fraud, when he conveyed said premises to Oettinger, and he is liable to the plaintiff for the damages so sustained, in an action of trespass.

*Wayne P. Rambo,* with him *Ormond Rambo,* for appellee.—Even, a written defeasance signed by the grantee, but unacknowledged and unrecorded, though contemporaneous with the execution and delivery of a deed absolute on its face will not be admitted to convert such deed into a mortgage: Molly v. Ulrich, 133 Pa. 41; Grove v. Kase, 195 Pa. 325; Crotzer v. Bittenbender, 199 Pa. 504; Lohrer v. Russell, 207 Pa. 105; Safe Dep., etc., Co. v. Linton, 213 Pa. 105; Sterck v. Germantown Homestead Co., 27 Pa. Superior Ct. 336.

That the statement does not show any declaration of trust in writing, as required by sec. 4 of the Act of April 22, 1856, P. L. 532.

No trust ex malificio arises, for the conveyance was absolute and nothing subsequently said by a grantee will turn an estate that has passed absolutely from the grantor into a trust: McCloskey v. McCloskey, 205 Pa. 491.

OPINION BY HEAD, J., July 20, 1910:

The judgment from which this appeal is taken was entered on a demurrer to the statement of claim. The material facts therefore must be gathered from the averments of the statement and the written article of agreement which is made part of it. It appears that one McBride had undertaken to improve thirteen lots in the city of Philadelphia by the construction of buildings thereon. These lots were in two separate parcels. Four of them fronted on the south side of Walnut street east of Fifty-second and nine of them fronted on the north side of Chancellor street east of Fifty-second, all being in the twenty-seventh ward. We think we may safely assume

from the record, although it is not so specifically stated, that the legal title to all of the lots was then in McBride. Whatever may have been the condition of the remaining lots, it clearly appears that the one which is the subject of this controversy was incumbered, as he held it, to the extent of $1,800.

The plaintiff entered into a written contract with him to furnish the labor and material necessary to do the heating and range work in all of these thirteen buildings for the sum of $875. The agreement provided that $500 was to be paid in cash from time to time as the work progressed, and that the plaintiff would accept the note of McBride at three months for $375, the remainder of the contract price. This note was given when the work was completed and the plaintiff agreed that he would renew it once for a further period of three months upon the payment of the discount by McBride. The contract further provided that the plaintiff should not enter a mechanic's lien against the property, and the owner in turn stipulated that "as collateral security for the payment of the said note the said McBride agrees to set aside the equity in No 6 upon the plan of the operation subject to an encumbrance of $1,800." The agreement contained no other description of the lot referred to except that in the language quoted. This agreement is not dated except as to year, to wit, 1905. The statement of claim, however, avers that it was executed and delivered on or about August 11, 1905.

On that very day McBride and his wife executed and delivered to one Fetter a deed for one of the thirteen lots covered by the agreement, which, according to the averment in the declaration, was the same lot specified as No. 6 in the agreement. This deed was duly recorded on the next day, August 12. Fetter held the title thus conveyed to him until March 17, 1906, when, by a deed of that date, he conveyed the lot to Alexander D. Robinson, the present defendant. This deed was recorded on September 18, 1906. Robinson, by a deed dated Septem-

ber 7, 1906, and recorded on September 18 of the same year, conveyed the same lot to Aaron Oettinger. It is agreed on all hands that this last-mentioned conveyance was made to an innocent purchaser for value and that he thereby took such a clear title to the lot as removed it entirely from the scope of this inquiry.

The plaintiff, however, alleges that both Fetter, the immediate grantee from McBride, and his grantee Robinson, the present defendant, were mere volunteers. That neither one of them paid any consideration for the respective conveyances to them, and that every remedy that would have been available to the plaintiff as against McBride is equally available as against Robinson, the present defendant.

The plaintiff's theory, on which he bases his right to recover in this action, may be thus stated: McBride in his written agreement undertook "to set aside the equity in No. 6 as collateral security" for the payment of the note provided for in the agreement. That this undertaking amounted to a covenant to execute a second mortgage upon that lot. That as between the parties, equity will regard that as done which was agreed to be done. Although the mortgage was never in fact executed or the equity set aside in the language of the contract, McBride thereafter held that equity impressed with a trust for the benefit of the plaintiff to the extent of the credit he gave. That McBride, being thus a trustee of the legal title for the benefit of the plaintiff, Robinson, who took that title from him as a volunteer, with notice of the agreement, took it impressed with the same trust. That when Robinson, so holding the title in trust to that extent for the plaintiff, sold the lot to an innocent purchaser, he committed a willful breach of the trust and made himself liable in damages in an action on the case, now trespass, to his cestui que trust, the plaintiff, and must answer for the loss which the plaintiff has sustained by that breach of trust.

The argument is plausible and at first blush the con-

clusion drawn from it cannot be escaped without some difficulty. As we view it, the plaintiff's contention cannot be directly answered by invoking the Act of June 8, 1881, P. L. 84, denying effect to parol or unrecorded defeasances intended to convert a deed absolute on its face into a mortgage. The plaintiff does not allege that the present defendant or his predecessor in title, or McBride, the common ancestor, had lent money and taken the title to secure its repayment. There is no attempt here to cut down any one of the conveyances referred to from a deed absolute on its face to a mortgage. Nor do we think the theory of the plaintiff, if otherwise sound, could be answered by the interposition of the Act of April 22, 1856, P. L. 532, on the subject of trusts. The reason is that if the trust for which the plaintiff contends exists at all, it was created by the written agreement of August 11, 1905, and results from the construction which the law puts on the covenant in that agreement which we have quoted. This trust, therefore, if it exists at all, exists by implication or construction of law, and is manifested by a writing.

But if, as the record stands, we are obliged to assume that every averment of fact in the statement is established, we have the further right to assume that the plaintiff has stated his case as strongly as he can. Especially is this true where, as in this case, the legal sufficiency of his statement is attacked by demurrer and he does not undertake to amend. It is also true that although neither one of the two acts of assembly cited will overthrow the plaintiff's claim, their significance as illustrative of the general policy of our law, is neither to be overlooked nor forgotten.

The present defendant holds a recorded deed purporting on its face to convey to him a fee simple title for the ground which it describes, subject only to such incumbrances as are mentioned in it or duly evidenced by the records at the time he took his conveyance. If the plaintiff's contention be sustained, that deed it is true will not be declared to be a mortgage, but in fact it will be cut

down in quantity and value by making the estate therein conveyed subject to a trust not referred to in the deed and not evidenced by any of those records from which a grantee ordinarily ascertains to what extent, if any, the estate which he takes is burdened or incumbered.

When the plaintiff therefore seeks to impress upon real estate conveyed to Robinson, the defendant, by a deed absolute on its face, a secret trust, not evidenced by any recorded writing, the burden is clearly on him to exhibit a case showing affirmatively every fact that would require the law, on well-settled principles, to declare and enforce the trust which the parties themselves have not adequately provided for.

Now it is clear, according to the statement, that even if the lot which McBride conveyed to Fetter and the latter conveyed to Robinson is the same lot referred to in the agreement between the plaintiff and McBride—and this does not clearly appear from the statement—there was no impediment to the conveyance by McBride to Fetter. This conveyance was made on the same day as the agreement. The lot was not then impressed with any trust because the agreement provided only for a future subjection of it to the alleged trust. The plaintiff had not done any work. He might never do it. McBride had not yet asked for the credit which the agreement provided he might ask for. Of course, it was his privilege to pay the plaintiff in cash on the completion of the work, and if he had done so, then the alleged trust never would have arisen. The statement does not aver when the work was completed and we therefore do not know when the plaintiff's right to have his note accrued. The record does not show in whose hands the legal title to the lot was, when the work was completed and when the plaintiff had a right to demand not only the note but the collateral security for it mentioned in the agreement. There is no averment that the plaintiff was ignorant of the various transfers of the title as they were evidenced by the record, nor is there any that when the time had arrived for the giving of the

note that McBride was insolvent or that the plaintiff was unwilling to accept his personal obligation for the deferred payment. There is no averment that the plaintiff ever demanded from McBride, when he gave the first note evidenced by the record or any renewal thereof, the collateral security which the original agreement called for. So far as the record shows, McBride never sought or obtained credit to the extent provided for in the written agreement. There is no evidence that he gave any note earlier in date or for a greater amount than the note of August 22, 1906, for $300. This was a note for thirty days and was renewed on September 21 for a like amount at three months. That renewal note was in turn renewed on December 24, 1906, again for a period of three months, falling due in March, 1907.

As already stated, there is no averment as to the financial condition of McBride, save only the one that at the time suit was brought he was financially unable to pay his note. The declaration does aver that both Fetter and Robinson had notice of the original agreement between Baile and McBride dated in August, 1905. That agreement, even if read by either or both, would not necessarily bring home to them knowledge of the fact that the lot which McBride conveyed was the same lot referred to in his agreement with the plaintiff. Indeed the fact that his conveyance to Fetter and agreement with the plaintiff were dated on the same day would lend color to the conclusion that the lot he conveyed was not the one which he had agreed to set aside to secure the plaintiff. But even with this knowledge Fetter had a right to take a conveyance from McBride and rely on the proposition that he would discharge the covenant in his agreement when and in the manner he was therein required to do. If, when settlement time came, McBride increased his cash payment, and thereby diminished the amount of his note, and if, instead of asking three months' credit he averred his ability to pay in thirty days, the plaintiff could, if he chose, accept this personal obligation. But he undoubt-

edly had the right to insist on his agreement being performed according to its terms.  When McBride offered his note for $300 at thirty days, the plaintiff had a right to insist that he should furnish the collateral security which his agreement provided for.  If he was unable or unwilling to do so, the dependent covenant of the plaintiff not to file a mechanic's lien fell, and he was at liberty to avail himself of every remedy offered him by law to secure the balance of the money due him.

But if, knowing the situation as it was evidenced by the record—and he does not aver that he did not know it— he chose to accept the personal obligation of McBride without requiring any collateral security, we feel unable, in the light of the acts of assembly referred to and the general policy of the law, to hold that the lot of ground conveyed to this defendant was impressed with a secret trust and that the defendant can be held to answer any damages for the alleged breach of that trust.

The defendant; therefore, having no contractual relation whatever with the plaintiff, and having committed, as we view it, no willful breach of a trust seated upon the property he conveyed, was not liable to answer to the plaintiff in this action, and the learned court below was right in entering judgment on the demurrer in favor of the defendant.

Judgment affirmed.